**FILED**

March 04, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____NW_____

DEPUTY

## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS WACO DIVISION

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

Phone (864) 992-7104

Email: atpg-tech@charter.net

| | |
|---|---|
| LARRY GOLDEN,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.<br><br>　　　　Defendant. | CASE NO: <u>6:25-cv-00596-DAE</u><br><br>**JURY TRIAL DEMANDED**<br><br>**(Direct Patent Infringement),**<br>**(Willful Patent Infringement),**<br><br>February 27, 2026 |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

| | |
|---|---|
| THE FEDERAL CIRCUIT'S PLEADING STANDARDS FOR PLAINTIFF'S '287, '439, AND '189 PATENTS ASSERTED IN THIS CASE | 1 |
| PLAINTIFF'S ALLEGED DIRECT PATENT INFRINGEMENT | 3 |
| Samsung's Direct Infringement of a New, Improved, and Useful Cell Phone | 3 |
| The Patent Trials and Appeals Board (PTAB) | 4 |
| The United States Court of Federal Claims (CFC) | 4 |
| The United States District Court for the Northern District of California (NDC), and The United States Court of Appeals for the Federal Circuit | 6 |
| WITNESSES WILL TESTIFY TO THE DESIGN OF SAMSUNG'S SMARTPHONE AND SMARTWATCH | 11 |
| HAROLD P. KIMBALL Jr. | 12 |
| DOUG ERWIN CUMBIE. | 12 |
| GILBERT E. PACEY, Ph.D. | 13 |
| GURU SUBRAMANYAM, Ph.D. | 13 |
| WOLFGANG U. SPENDEL, Ph.D. | 14 |
| WILLIAM H. STEINECKER, Ph.D. | 14 |
| JAMES A. COX, Ph.D. | 15 |
| AUGUSTUS WAY FOUNTAIN III, Ph.D. | 16 |

| THOMAS THUNDAT, Ph.D. | 16 |
|---|---|
| PLAINTIFF'S ALLEGED WILLFUL PATENT INFRINGEMENT | 18 |
| Willful Infringement Requires a Finding of Direct Infringement First | 18 |
| Knowledge requirement for Willful Patent Infringement<br>• Under Rule 14(b)<br>• Email Correspondence<br>• Service of Complaint | 18 |
| Plaintiff's Demand for a Jury Trial to Decide Willfulness | 19 |
| THE LEGAL SUFFICIENCY OF PLAINTIFF'S COMPLAINT | 21 |
| SAMSUNG IS BOUND BY THE DOCTRINE OF COLLATERAL ESTOPPEL AND THE DOCTRINE OF VERTICAL STARE DECISIS | 23 |
| RES JUDICATA AND KESSLER | 26 |
| SAMSUNG ENCOURAGES A JUDICIAL SYSTEM OF SYSTEMIC AND STRUCTURAL RACISM | 28 |
| CONCLUSION | 29 |

## THE FEDERAL CIRCUIT'S PLEADING STANDARDS FOR PLAINTIFF'S '287, '439, AND '189 PATENTS ASSERTED IN THIS CASE

The Federal Circuit determined in *Larry Golden v. Google LLC*; Case No. 22-1267 that "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 ***Smartphone***, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … It [claim chart] attempts [] to map claim limitations to infringing product features, and it does so in a relatively straightforward manner …"

On display in the claim charts is Plaintiff's claim limitations that included the Google smartphone operating system that enables the connectivity of the DoD DTRA ATAK software to Draper Laboratories, Inc.'s CBRN plugin sensors.

The Federal Circuit on 09/08/2022, in *Larry Golden v. Google LLC*; Case No. 22-1267 — "VACATED AND REMANDED" the relevant Case No: 22-1267 Document 15; back to the District Court "to be filed and request service of process".

The Federal Circuit determined the complaint, "includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" … "in a relatively straightforward manner" … and that the [Circuit] "express no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous."

Three-Judge Panel: "DISCUSSION. 'Under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), a court must dismiss a complaint if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 … [T]his standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (citation omitted). A plaintiff must allege facts that give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted) … this court has explained that a plaintiff … must plead "'enough fact[s] to raise

a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged."

"Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … It [claim chart] attempts [] to map claim limitations to infringing product features, and it does so in a relatively straightforward manner …[W]e conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart.…"

Android is an operating system (OS) that powers smartphones, and one of its features is connectivity (i.e., Bluetooth). It is the broad layer of software on Samsung phones. Google developed Android, but it is an open-source OS. Samsung takes this open-source OS, make changes to it, and then use the changed OS as the layer of software on their own phones. This is what Samsung does.

All Samsung Galaxy phones are Android phones, which means all of the Samsung smartphones running Android 12 Operating System, Android 13 Operating System, or Android 14 Operating System; include at least the Samsung Galaxy Z Fold7, Samsung Galaxy Z Fold5, Samsung Galaxy S25, Samsung Galaxy S25+, Samsung Galaxy S25 Ultra, Samsung Galaxy S24+, Samsung Galaxy S24 FE, Samsung Galaxy S24 Ultra, Samsung Galaxy A15 5G, Samsung Galaxy A16 5G, Samsung Galaxy A25 5G, Samsung Galaxy A35 5G, and Samsung Galaxy A56 5G phones listed in the complaint.

Therefore, Plaintiff believes he has alleged enough facts that give rise to "more than a sheer possibility that Samsung has acted unlawfully," *Iqbal*, 556 U.S. at 678; "enough fact[s] to raise a reasonable expectation that discovery will reveal' that Samsung is liable for the misconduct alleged", and, "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 …

2

## PLAINTIFF'S ALLEGED DIRECT PATENT INFRINGEMENT

**Samsung's Direct Infringement of a New, Improved, and Useful Cell Phone**

This is not a complaint, whereby Plaintiff is looking to change any prior decisions; re-litigate any prior decisions, or re-litigate in this current case causes of actions or issues that have already been decided or adjudicated.

Plaintiff is demanding damages for Samsung's alleged direct infringement, joint (direct) infringement, and direct infringement under the doctrine of equivalents. Plaintiff alleged Samsung is making, using, selling, or importing certain Samsung products (i.e., Samsung's central processing unit, operating system, smartphone, camera, and smartwatch), believed to infringe the patented inventions described in, and claimed in at least Plaintiff's '287, '619, '439, and '189 patents.

Plaintiff outlined various means of direct infringement (i.e., direct infringement under 35 U.S.C. §§ 271(a) & 271(g); direct infringement under the doctrine of equivalents; and joint or divided (direct) infringement), that Plaintiff believes Samsung is liable for the misconduct alleged.

> 35 U.S.C. § 282 (a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.
> 35 U.S.C. § 282 (g) Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of process patent.

Plaintiff is seeking to collect damages on the following direct infringement theory: "Samsung's mobile, consumer, or cellular devices, that are integrated with, or interconnected to, a CBRNE-H detection capability, allegedly infringes Plaintiff's patented communicating, monitoring, detecting, and controlling (CMDC) devices".

3

Judges, since 2015, eleven years, have been given the opportunity to review and issue an opinion on Plaintiff's direct infringement theory of "a mobile, consumer, or cellular devices, that is integrated with, or interconnected to, a CBRNE-H detection capability, allegedly infringes Plaintiff's patented CMDC device. The various courts are:

**The Patent Trials and Appeals Board (PTAB):**

"In the *United States Department of Homeland Security v. Larry Golden* "Final Written Decision" Case IPR2014-00714, Entered: October 1, 2015, the Patent Trials and Appeals Board (PTAB) construed "built in, embedded" as "something is included within, incorporated into, disposed within, affixed to, connected to, or mounted to another device, such that it is an integral part of the device".

The PTAB decided "built-in, embedded" aligns with Golden's patent specifications—the detection capability is placed "in, on, upon, or adjacent" the communication device—while the PTAB's construction of "built-in, embedded" is: "something is included within, incorporated into, disposed within, affixed to, connected to, or mounted to another device, such that it is an integral part of the device". [The PTAB also construed "communication device" the same as "monitoring equipment"].

The PTAB determined infringement of Appellant's patented CMDC devices occurs when a CBRNE-H detection capability is placed "in, on, upon, adjacent, built-in, embedded, included within, incorporated into, disposed within, affixed to, connected to, or mounted to another device", such that it is an integral part of Appellant's communicating, monitoring, detecting, or controlling, (CMDC) device (i.e., new, improved upon, and useful cell phone; smartphone)

**The United States Court of Federal Claims (CFC):**

4

Judge Braden, in the United States Court of Federal Claims, *Golden v. United States*, Case No. 13-307C "Memorandum Opinion and Order Denying the Government's Motion to Dismiss, Dkt. 94, filed 11/30/16, fully described how infringement of Appellant's patented CMDC device occurs when a mobile, consumer, or cellular device is integrated with, or interconnected to, a CBRNE-H detection capability.

"The February 12, 2016 Amended complaint identifies over thirty devices that were developed or procured, as a result of Government solicitations, Government contracts, or National Science Foundation ("NSF") grants. 2/12/16 Am. Compl. at ¶¶ 68-127. The relevant devices are: Smartphone Microscope; Smartphone Biosensor Cradle; iPhone Biodetector Smartphone; Smartphone-Based Rapid Diagnostic Tests; Samsung Galaxy s6 Microscope Smartphone; Cell-All Synkera MikroKera Ultra; iPhone Biodetector Smartphone; …

"The February 12, 2016 Amended Complaint's NFC claims also allege sufficient facts to plausibly establish that the use of the accused devices was "with the authorization or consent of the Government." Authorization or consent can be implied from the circumstances… *Hughes Aircraft Co.*, 534 F.2d at 901."

"The relevant [awards] are being used to develop: "a portable smartphone attachment [] to detect viruses and bacteria," … "[a device] that derives biological signals from your smartphone's accelerometer … "a cradle and app for the iPhone to make a handheld biosensor that uses the phone's own camera [] to detect any kind of biological molecules or cells," … a handheld instrument to help contain the spread of Ebola, HIV, Tuberculosis, and Malaia, … "[a portable device for] real-time detection of explosives, toxicants, and radiation," …

"Viewed in the light most favorable to Plaintiff, the February 12, 2016 Amended complaint alleges sufficient facts to raise a plausible right of relief under section 1498(a)."

**The United States District Court for the Northern District of California (NDC), and The United States Court of Appeals for the Federal Circuit**

Twelve Federal Judges repeatedly confirmed arguments that the integration of a CBRNE-H detection capability with a mobile device; infringes Plaintiff's patented CMDC invention.

| Judge(s) | Case Number | Case Title | Court | Dates |
|---|---|---|---|---|
| 3 Fed Cir Judges | 2022cvpri01267 | Golden v. Google LLC | U.S. Court Of Appeals, Federal Circuit | 12/16/2021 - *09/08/2022* |
| 1 District Judge | 3:2023cv00048 | Golden v. Samsung Electronics America, Inc. | California Northern District Court | 01/05/2023 - *06/08/2023* |
| 3 Fed Cir Judges | 2023cvpri02120 | Golden v. Samsung Electronics America, Inc. | U.S. Court Of Appeals, Federal Circuit | 07/07/2023 - *02/12/2024* |
| 1 District Judge | 3:2022cv05246 | Golden v. Google LLC | California Northern District Court | 09/14/2022 - *04/03/2024* |
| 1 District Judge | 3:2022cv05246 | Golden v. Google LLC | California Northern District Court | 09/14/2022 - *04/03/2024* |
| 3 Fed Cir Judges | 2024cvpri02024 | Golden v. Google LLC | U.S. Court Of Appeals, Federal Circuit | 07/01/2024 - *06/25/2025* |

The United States Court of Appeals for the Federal Circuit Judges in *Golden v. Google, LLC*, Case No. 22-1267; determined direct infringement arises when there's a combined ATAK software; CBRN plugins; CPU; and a Smartphone.

The Federal Circuit in *Golden v. Google LLC* Case No. 22-1267 goes on to say: "In the Google case, the district court ***again*** concluded that Mr. Golden's complaint was frivolous. Here, however, Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google [Pixel 5] Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" ... "to the extent that the chart includes the "exact same language" as previously rejected charts, it is simply the language of the independent claims being mapped to" ... "[i]t attempts—whether successfully or not—to map claim

6

limitations to infringing product features, and it does so in a relatively straight-forward manner. We conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart."

The Federal Circuit in *Larry Golden v. Google LLC*; Case No. 22-1267 examined and determined Golden has described how the Google "smartphone", that include the ATAK software and CBRN plugin sensors literally infringes at least claim 5 of Golden's '287 Patent; claim 23 of Golden's '439 Patent; and claim 1 of Golden's '189 Patent.

The United States Court of Appeals for the Federal Circuit Judges in *Golden v. Samsung* Case No. 23-2120; agreed with the Northern District of California Court Judge in *Golden v. Samsung* Case No. 23-0048 that direct infringement arises when there's a combined ATAK software; CBRN plugins; CPU; and a Smartphone.

In *Golden v. Samsung Electronics America, Inc*. Case: 23-2120, Document 28; *OPINION* filed for the court by Prost, Circuit Judge; Taranto, Circuit Judge and Chen, Circuit Judge. Filed: 02/12/2024.

"Mr. Golden's complaint alleged, in part, that Samsung's smartphones possess that claimed detector/sensor functionality on three alternative bases: (1) through the "Android Team Awareness Kit, ATAK," which is "[b]uilt on the Android operating system," involves "plug-ins" and "app specific software," was "[i]nitially created" by the "Air Force Research Laboratory" together with the "Defense Threat Reduction Agency," and is "available to warfighters throughout the DoD," Appx112 ¶ 55; Appx119, 127; (2) through add-on devices or modifications that utilize the smartphone's built-in camera, Appx111 ¶ 54, Appx124–25; and (3) through nine "standard sensors" which "can be used as 'biosensors,'" Appx126."

"Samsung moved to dismiss Mr. Golden's complaint, arguing that, among other things, Mr. Golden's complaint failed to plausibly state a patent-infringement claim. Appx146–48. More specifically, Samsung argued that Mr. Golden's complaint stated no alleged facts that went beyond allegations that Samsung was making and selling smartphones that could be modified post-sale by others to perform the accused detector/sensor functionality. On that basis, Samsung said, there are no plausible allegations Samsung was engaged in directly infringing activities. Appx146–47."

"The district court agreed and dismissed Mr. Golden's complaint with prejudice, concluding, in part, that "[t]he allegations that his patents cover the identified functionalities included in Samsung's products are wholly unsupported and implausible on their face." Golden, 2023 WL 3919466, at *2."

"We reject Mr. Golden's appeal arguments and therefore affirm the district court's dismissal of his complaint."

The Northern District of California Court Judge Haywood S. Gilliam, Jr. in *Golden v. Google LLC* Case No. 22-5246; determined direct infringement by or for the Government arises when there's a combined ATAK software; CBRN plugins; CPU; and a Smartphone.

In *Larry Golden v. Google, LLC* NDC Case 3:22-cv-05246-RFL "Order Granting Motion to Dismiss with Leave to Amend" Document 41 Filed 08/10/23; the then presiding Judge Haywood S. Gilliam, Jr. agreed with the Defendant [Google] that the Google Pixel devices could only infringe Golden's asserted patents if a user were to add the additional ATAK application and CBRN plugins.

The Northern District of California Court Judge Rita F. Lin in *Golden v. Google LLC* Case No. 22-5246; determined direct infringement by or for the Gov't

arises when there's a combined ATAK software; CBRN plugins; CPU, and a Smartphone.

In *Larry Golden v. Google, LLC* NDC Case 3:22-cv-05246-RFL "Order Granting Motion to Dismiss and Denying leave to File a Surreply" Document 68 Filed 04/03/24; the current presiding Judge Rita F. Lin agreed with the Defendant [Google] that the Google Pixel devices could only infringe Golden's asserted patents if a user were to add the additional ATAK application and CBRN plugins.

The United States Court of Appeals; Federal Circuit Judges in *Golden v. Google, LLC*, Case No. 24-2024; determined infringement occurs when a [Google] mobile, consumer, or cellular device is integrated with, or interconnected to, Draper's CBRNE detection capability.

In *Golden v. Google LLC.*, Case No. 24-2024, Dkt. 41; filed 06/25/2025, three Federal Circuit judges again confirm, infringement of Plaintiff's patented CMDC device occurs when a mobile, consumer, or cellular device, is integrated with, or interconnected to a CBRNE detection capability. The Circuit's opinion includes the following:

"We conclude that the district court did not err in finding that Mr. Golden's five infringement "theories all require that the accused products be modified in some way for them to infringe on the patents-in-suit." Decision at *1;

"Mr. Golden's five infringement "theories all require that the accused products be modified in some way for them to infringe on the patents-in-suit." Decision at *1; see also *Nazomi Commc'ns, Inc. v. Nokia Corp.*, 739 F.3d 1339, 1346 (Fed. Cir. 2014) (finding no infringement when the accused products "do not infringe without modification—the modification of installing the required software."). Mr. Golden's first theory of infringement requires the use of the third-

party app "ATAK-CIV" for at least two limitations of each asserted claim. App'x 300–302 ¶¶ 56 63; see also App'x 400–407.

The circuit court has held that an apparatus claim directed to a computer that is claimed in functional terms is nonetheless infringed so long as the product [Samsung's smartphones or smartwatches] is designed "in such a way as to enable a user of that [product] to utilize the function . . ." *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002). "Where, [] a product includes the structural means for performing a claimed function, it can still infringe "separate and apart" from the operating system that is needed to use the product."

Plaintiff will argue that the cell phone was allegedly "*modified*" by Samsung to function as a CBRNE-H sensing device. Plaintiff will argue that the Samsung "*modified*" cell phone was "manufactured", and was "suitable for use" as a CBRNE-H sensing device before importation or shipment into the United States.

Plaintiff will argue that the importation of the Samsung "*modified*" cell phone, allegedly infringes Plaintiff's patented process. Plaintiff will argue that after shipment into the United States of the Samsung Galaxy smartphone that is designed to include as standard the android operating system for integrating or enabling a CBRNE-H detection capability; placed "in, on, upon, adjacent, built-in, embedded, included within, incorporated into, disposed within, affixed to, connected to, or mounted to another device, such that it is an integral part of the Samsung Galaxy smartphone"; allegedly infringes Plaintiff's United States patent for a communicating, monitoring, detecting, or controlling, (CMDC) device (i.e., a new, improved upon, and useful cell phone; or, smartphone)

If necessary, Plaintiff is ready with fact and expert witness testimonies to support Plaintiff's claim that Samsung allegedly performed work under an implied authorization to manufacture for the Government a "*modified*" cell phone that is designed to detect for CBRNE-H. [DHS S&T BAA07-10 *Cell-All* initiative; 2007]

## WITNESSES WILL TESTIFY TO THE DESIGN OF SAMSUNG'S SMARTPHONE AND SMARTWATCH

The witnesses will testify that Samsung, while performing work for the Government, under an "implied authorization"; designed its smartphones and smartwatches to align with the specifications of the Department of Homeland Security's Science and Technology Directorate (DHS S&T), BAA07-10 *Cell-All Ubiquitous Biological and Chemical Sensing* initiative [published 10/30/2007].

"… biological and chemical sensors could be effectively integrated into common cell phone devices and made available to the American public … the Nation could potentially benefit from a sensor network with more than **240M sensors**. Through this BAA, HSARPA is seeking to accelerate advances in miniaturized biological and chemical sensing (e.g. laboratories on a chip) with integration into common device(s) and a communication systems concept for large scale multi-sensor networks. "The proposed concept should develop a miniaturized sensor, device and system…"

Plaintiff is not arguing against the ruling made in the other Courts. Plaintiff is arguing that the required *"modification"* for the accused Samsung devices to function as a CBRNE-H sensing device is already complete when shipped to the U.S. In most all cases the enabled Samsung CBRNE-H sensing device was made before importation; before any offer for sell; and before the selling of the devices.

Samsung is collateral estoppel from arguing the Samsung CBRNE-H sensing devices needs additional *"modification"* before infringement of Plaintiff's patented inventions occurs. Plaintiff will argue, the CBRNE-H detection capabilities are already a part of the Samsung smartphone and smartwatch design, and is made to function as a sensing device through Samsung's standard android operating system.

11

Following are the names of Plaintiff's witnesses and their qualifications. Plaintiff is also prepared to provide this court with a summary of the factual issues the witnesses will testify to: e.g. miniaturization of sensors to fit internal the "*modified*" cell phone; developing software from the source codes released by Google that causes the integration of sensors with devices, and causes the "*modified*" cell phones to function as CBRNE-H scanning, detecting, or monitoring devices:

**HAROLD P. KIMBALL Jr.**

Enabling Technologies, Inc. (ETI), President; Software Functional Manager / Senior Software Developer Support Systems Associates, Inc. (SSAI), Warner Robins, Georgia; Education: Bachelor of Science in Computer Science, 1990, Mercer University, Macon, Georgia; Associate of Science in Computer Science, 1987, Macon College, Macon, Georgia; Technical Skills: Machines: PCs, SUN, VAX, Alpha; Operating Environments: UNIX, VMS, MS-DOS, Novell Netware, Windows 95 & NT Software: Sybase, ORACLE, Advantage, FoxPro, Microsoft Word, TBBS bulletin board; Languages: Delphi, SQL, Ada, C, Assembly, Pascal, FoxPro, Pro*C, PL/SQL; Experience and Accomplishments: Manager I Lead Developer for the Digital Mapping Interface System (DMIS);Manager / Lead Developer for the AC-130H Gunship Part Task Trainer (pIT). Responsible for the Cell-All proposal; PowerPoint presentation; Two modified cell phones; and illustration at Embassy Suits, Greenville, SC; and TV broadcast at local station.

**DOUG ERWIN CUMBIE**

Enabling Technologies, Inc. (ETI); Computer & Electrical Engineer; Education: BS, Electrical Engineering, University of West Florida, 2007; BS, Computer Engineering, University of Central Florida, 2001; Job-Related Skills: C and C++ programming (Bortand C++ Builder 6).; C# (MS Visual Studio 200312005 - desktop and mobile devices); Java language (Borland JBuilder, JCreator); VHDL

knowledge, MC68HC11 microcontroller assembly language; ASP, VBScript, JavaScript, HTML, SOL, MySOL (Macromedia Dreamweaver); PSpice (circuit design), LogicWorks (digital circuit design); BASIC, OBasic; DOS, Windows 9812000IXP, Unix; Embedded systems; Experience and Accomplishments: Handheld Wireless GPS Tracking Device: Designed and developed with one team member for undergraduate electrical engineering senior design course. UAV Ground Station: Developed a ground control system for communicating with a remote unmanned aerial vehicle.

## GILBERT E. PACEY, Ph.D.

CBRNE Coordinator IDCAST; Professor, Director; Miami University Center for Nanotechnology, Department of Chemistry and Biochemistry, Miami University, Oxford, Ohio 45056; Education: Bradley University, BA 1974; Loyola University of Chicago, Ph.D. 1979; Professional Experiences: Assistant Professor, Loyola, University of Chicago (1978-1979); Director; Ohio Micromachining Analytical Chemistry Consortium (1997-2001); Publications: Anita R. Taulbee, Justin A. Heuser, Wolfgang U. Spendel, Gilbert E. Pacey, "Qualitative Analysis of Collective Mode Frequency Shifts in L-alanine using Terahertz Spectroscopy", Anal. Chem., 2009, 81(7), 2664-2667. Funding: Dr. Pacey has 30 years' experience managing research projects at MU and the last 5 directing all MU research and external funding, intellectual property, and compliance issues. He is currently the CBRNE Sensors Coordinator: Institute for Development of Advanced Sensor Technology, IDCAST

## GURU SUBRAMANYAM, Ph.D.

Professor, Electrical & Computer Engineering, University of Dayton; Education: PhD in Electrical Engineering, University of Cincinnati, 1993; MS in Electrical Engineering, University of Cincinnati, 1988. Work Experience: August

2008- current: Professor, Dept. of ECE, University of Dayton, Dayton, OH.; Publications (From more than 100 total publications); G. Subramanyam, C.M. Bartsch, J. G. Grote, R. R. Naik, L.L. Brott, M. Stone, and A. Campbell, "Effect of external electrical stimuli on DNA-based biopolymers", NANO journal. Funding: Recent Research on voltage tunable dielectrics and biopolymers: Has been a Principal Investigator (PI) in several funded projects with AFRL, AFOSR, DARPA, NASA, NSF, and Ohio Board of Regents Research Challenge Grants. Total funding as a PI exceeds $1,500,000 to date. Recent Collaborators: Felix A. Miranda, Fred W. Van Keuls, Robert R. Romanofsky, (NASA Glenn Research Cleveland, OH).

**WOLFGANG U. SPENDEL, Ph.D.**

Research Scientist IDCAST/Miami University Center for Nanotechnology, Department of Chemistry and Biochemistry, Miami University, Oxford, Ohio 45056; Education: Ph.D. Physical Chemistry, Pennsylvania State University, State College PA, 1978; BS Chemistry, Grand Valley State College, Allendale, MI, 1974; Work Experience: Miami University, Ohio - Research Associate, Industry Liaison IMP Inc. (Consulting Position) Advanced Technology Development Principal Scientist - Research and development leader responsible for technology development and project management; Principal Scientists selected as the top 5% of the P&G's R&D staff. United States Marine Corps; Publications/Patents: Justin Heuser, James Moller, Wolfgang Spendel, and Gilbert Pacey, "Aqueous Foam Drainage Characterized by Terahertz Spectroscopy, Langmuir, 2008, 24(20), 11414-11421.; Heuser, J. A., Spendel, W. U., Pisarenko, A. N., Yu, C., Pechan, M. J., Pacey, G. E., Formation of surface magnetite nanoparticles from iron-exchanged zeolite using microwave radiation; J. Mater. Sci., 42, 9057 – 9062, 2007.

**WILLIAM H. STEINECKER, Ph.D.**

14

IDCAST Research Scholar; Department of Chemistry and Biochemistry, Miami University, Oxford, Ohio 45056; Education and Training: Miami University, BS 2001; University of Michigan, MS 2003; University of Michigan, Ph.D. 2006; Professional Experiences: Post-Doctoral Researcher, Schlumberger-Doll Research (2006-2008); Research Scientist, Schlumberger: Oil phase DBR (2008); Publications: Rowe, M.P.; Steinecker, W.H.; Zellers, E.T. "Comparison of the Biphasic and Single-Phase Synthesized Gold Nanoparticles as Vapor Sensing Chemiresistors"; Kaanta, B.C.; Chen, H.; Lambertus, G.R.; Steinecker, W.H.; Zhdaneev, O.; Zhang, X. "High Sensitivity Micro-Thermal Conductivity Detector for Gas Chromatography," Proceedings of IEEE MEMS.; Zhong, Q.; Steinecker, W.H.; Zellers, E.T. "Characterization of a High-Performance Portable GC with a Chemiresistor Array Detector"; Kim, H.; Steinecker, W.H.; Lambertus, G.R.; Astle, A.A.; Najafi, K.; Zellers, E.T.; Washabaugh, P.D.; Bernal, L.P.; Wise, K.D. "Micropump-Driven High-Speed MEMS Gas Chromatography System." Will testify that the internal CBRNE-H capability is enabled through the phone's camera, and that no further modification to the cell phone is needed to function as a sensing device.

**JAMES A. COX, Ph.D.**

Professor of Chemistry, Department of Chemistry and Biochemistry, Miami University, Oxford, OH 45056; Educational: Ph.D. 1967 Chemistry University of Illinois; BS Chemistry. 1963 Chemistry University of Minnesota; Professional Experiences: Professor Miami University; Chair Miami University; Professor Southern Illinois University Carbondale; Research Associate University of Wisconsin Madison; Lecturer University of Wisconsin Madison; Publications (156 Total) A.Z. Ernst, S. Zoladek, K. Wiaderek, A. Kolary-Zurowska, K. Miecznikowski, P.J. Kulesza, J.A. Cox, Network Films of Conducting Polymer-

Linked Polyoxometalate-Modified Gold Nanoparticles: Preparation and Electrocatalytic Reactivity Toward Hydrogen Peroxide, Electrochimica Acta 53, 3924-3931, 2008.; A.Z. Ernst, L. Sun, K. Wiaderek, A. Kolary, S. Zoladek, P.J. Kulesza, J.A. Cox, Synthesis of Polyoxometalate-Protected Gold Nanoparticles by a Ligand-Exchange Method: Application to the Electrocatalytic Reduction of Bromate, Electroanalysis, 19-20, 2103-2109, 2007.; M.M. Wandstrat, W.U. Spendel, G.E. Pacey, and J.A. Cox, Oxidation of a Phospholipid at an Electrode Modified with an Electrochemically Formed Sol-Gel Film.

## AUGUSTUS WAY FOUNTAIN III, Ph.D.

Chief Scientist; Targeted Area: Laboratory for Testing; Company Name: U.S. Army Edgewood Chemical Biological Center (ECBC); Company Profile: Edgewood Chemical Biological Center (ECBC) science and technology expertise has protected the United States from the threat of chemical weapons since 1917. Since that time, the Center has expanded its mission to include biological materials and emerges today as the nation's premier authority on chemical and biological defense. Scope of Work: During the term of this agreement ECBC will provide technical advice on the identification and selection of commercial off-the-shelf (COTS) or Domestic Nuclear Detection Office (DNDO) developed chemical agent detectors, biological agent detectors, explosives detectors, and others as deemed necessary for integration under the SAFECON BAA. ECBC will also plan and coordinate an on-site test, for a period of one-week, of the integrated devices; assuming all materials would be provided by the proposer. Laboratory total cost for R&D: $17,137 dollars.

## THOMAS THUNDAT, Ph.D.

Chief Scientist; Targeted Area: Chemical, Explosive, Radiological, and Nuclear detection; Company Name: Oak Ridge National Laboratory; Company

16

Profile: Oak Ridge National Laboratory (www.ornl.gov) is a Federally Funded Research and Development Corporation (FFRDC) managed and overseen by the Department of Energy and is its largest science and energy laboratory. Develop for or transfer technology to industry so it can be used in support of national or homeland security objectives as well as to enhance America's economic competitiveness in world markets. Rough Order of Magnitude: ORNL could provide new technology or access to technologies that we have helped develop in the following areas: For Chemical and Explosives detection, we are developing microcantilever-based technology that shows great promise. It will be small and have low power requirements, and could be achievable in the timeframe described in the BAA summary. For Radiological and Nuclear detection; low-cost gamma detection technologies that we can assist in configuring for this application. Total cost for R&D: $500,000 dollars. Theories of miniaturizing cantilever sensors for the detection of CBRNE; that is used inside handheld scanning devices and maritime cargo containers. Will testify to a visit Plaintiff made to the Oak Ridge National Laboratory to discuss a joint venture.

Plaintiff is asking the Court to issue an Order that Samsung discontinue its evasive and denial tactics, and enter into settlement talks with the Plaintiff for the alleged violation of the infringement theory that creates liability for Samsung: "when a Samsung Galaxy smartphone is integrated with, or interconnected to, a CBRNE-H detection capability, the Samsung Galaxy smartphone allegedly infringes Plaintiff's patented communicating, monitoring, detecting, and controlling (CMDC) device.

Or, if Samsung prefers, the Court honors Plaintiff's guaranteed right to a trial by jury. [U.S. CONS'T; 7th Amend.] and we proceed to selecting a jury to not only decide damages for the alleged violation of the infringement theory, but also the possible triple damages for the alleged willful patent infringement claims.

## PLAINTIFF'S ALLEGED WILLFUL PATENT INFRINGEMENT

### Willful Infringement Requires a Finding of Direct Infringement First

In the above section Plaintiff outlined various means of direct infringement (i.e., direct infringement under 35 U.S.C. §§ 271(a) & 271(g); direct infringement under the doctrine of equivalents; and joint or divided (direct) infringement), that Plaintiff believes Samsung is liable for the misconduct alleged.

### Knowledge requirement for Willful Patent Infringement

**Under Rule 14(b):** In *Golden v. United States* CFC Case No. 13-307C, Samsung was listed as a third-party contractor; contracted to commercialized a *"modified"* cell phone capable of CBRNE-H detection. Under Rule 14(b) of the Rules of the United States Court of Federal Claims (RCFC), the court notified Samsung to make an appearance to protect its interest in the subject matter of the suit. Although Samsung failed to appear, the notice *(Exhibit A)* filed on 03/31/21 establishes a beginning timeline for Samsung's knowledge of Plaintiff's patented inventions. [Pg. 18 of the complaint]

**Email Correspondence:** Plaintiff sent an email notice to the following Samsung representatives on May 15, 2021: yh.eom@samsung.com., j.stinziano@sea.samsung.com., and chrisk@sea.samsung.com. See *(Exhibit B)*

**Service of Complaint:** Samsung admits a complaint was served in January, 2023 (*Golden v. Samsung Electronics America, Inc.* NDC Case No. 23-0048) with enough facts alleging Samsung is continuing its purportedly infringing conduct. Likewise, this current complaint alleges the same.

"Serving a complaint will, in most circumstances, notify the defendant of the asserted patent and the accused conduct ... and sufficiently plead a post-filing/post-suit willful infringement claim." *Motion Offense, LLC v. Dropbox, Inc.*, No. 6:23-CV-303-ADA, 2024 BL 297370, at *3 (W.D. Tex. Aug. 26, 2024) ("*Motion Offense*

18

sufficiently pleaded post-suit willful infringement because the facts pleaded in the FAC satisfy the three Parity factors.

As the W.D. Tex. court held in *BillJco*, '[s]erving a complaint will, in most circumstances, notify the defendant of the asserted patent and the accused conduct. So long as the complaint also adequately alleges that the defendant is continuing its purportedly infringing conduct, it will satisfy all three Parity elements and sufficiently plead a post-filing/post-suit willful infringement claim.'") (internal citations omitted); *see Textile Comput. Sys. v. Broadway Nat'l Bank*, 620 F. Supp. 3d 557, 568 (W.D. Tex. 2022); *see BillJco, LLC*, 2022 U.S. Dist. LEXIS 17605, 2022 WL 299733, at *9-10 ("Serving a complaint will, in most circumstances, notify the defendant of the asserted patent and the accused conduct. So long as the complaint also adequately alleges that the defendant is continuing its purportedly infringing conduct, it will satisfy all three Parity elements and sufficiently plead a post-filing/post-suit willful infringement claim."); *see* e.g., *Atlas Glob. Techs., LLC v. Sercomm Corp.*, 638 F. Supp. 3d 721, 728 (W.D. Tex. 2022)

Patent infringement claims that carry with them knowledge requirements, are fact issues to be decided by a jury [U.S. CONS'T. 7th Amend.] on whether Samsung had a sufficient amount of knowledge of Plaintiff's patents and patented inventions before, and while Samsung continued its allegedly infringing conduct.

**Plaintiff's Demand for a Jury Trial to Decide Willfulness**

Patent infringement claims are issues-of-facts to be decided by a jury [U.S. CONS'T. 7th Amend.] In this case a jury must decide whether Samsung's alleged willful infringement claims are "wanton, malicious, and bad-faith behavior"; deliberate or intentional; or, that there's no willful infringement at all.

Recently, the Federal Circuit, in *SRI Int'l v. Cisco Sys.*, 2020-1685 (Fed. Cir. Sep. 28, 2021), clarified the confusion caused by an earlier remand to the district

court, in which the Federal Circuit instructed the district court to determine whether the infringer's conduct met the "wanton, malicious, and bad-faith behavior required for willful infringement." The district court, surprised by this instruction (as was the patent bar), nevertheless proceeded and found the infringer's conduct insufficient to meet this new, heightened standard.

On appeal for the second time, the case returned to the same three-member panel of the Federal Circuit, which clarified that it was not their intent to create a heightened requirement for willful infringement and reiterated the standard for willful infringement summarized last year in *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc., 946 F.3d 1367 (Fed. Cir. 2020)*: "willfulness requires a jury to find no more than deliberate or intentional infringement."

The Federal Circuit explained under "the concept of 'willfulness' requires the jury to find no more than deliberate or intentional infringement." *Halo Elecs., Inc. v. Pulse Elecs. Inc.*, 579 U.S. 93, 103 (2016).

Plaintiff intends to show the jury Plaintiff is entitled to enhanced damages because Samsung's conduct is allegedly "willful, wanton, malicious, bad-faith, deliberate, [intentional], consciously wrong, flagrant, or — indeed — characteristic of a pirate." (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 136 S.Ct. 1923, 1932 (2016). [Pg. 7 of the complaint]

The Western District of Texas (WDT) court may allow damages in the form of recovery for (1) lost profits, (2) reasonable royalties, and (3) treble damages for Samsung's alleged willful infringement. This court is tasked with calculating the fair market value of a license for one of the infringing item (i.e., Samsung's central processing unit, operating system, smartphone, camera, or smartwatch) and then multiply that value by the number of items that infringed. [Pg. 6-7 of the complaint]

Patent infringement claims are issues-of-facts to be tried by a jury [U.S. CONS'T. 7th Amend.]

## THE LEGAL SUFFICIENCY OF PLAINTIFF'S COMPLAINT

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure (FRCP), Samsung is allowed to file a motion to dismiss if Plaintiff has failed to state a claim upon which relief can be granted. This motion argues that, even if all the Plaintiff's factual allegations are true, the law does not provide a remedy for the claims Plaintiff is making. A monetary remedy for the claims Plaintiff is making is favored in this case:

"[Plaintiff] can seek damages for financial harm caused by infringement. The court may award lost profits if the patent holder [Plaintiff] can show a direct link between the infringement and lost sales. If lost profits are difficult to prove, courts award a reasonable royalty, which represents what the alleged infringer would have paid for a license. In cases of willful infringement, courts can triple the damages as a penalty."

Under the standards established by the U.S. Supreme Court in *Twombly* and *Iqbal*, Plaintiff have alleged enough factual content to make his claim plausible, not merely possible. All the same, the Northern District of California court is tasked with viewing Plaintiff's complaint in the light most favorable to the Plaintiff. If there is any plausible legal theory tying Samsung to the alleged misconduct, dismissal is unfavored.

"When there are well-pled factual allegations, this court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the Plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

The complaint, submitted by the *pro se* Plaintiff, "however inartfully pled, must be held to less stringent standards than formal pleadings drafted by lawyers …" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Because *pro se* Plaintiffs "are often

unfamiliar with the formalities of pleading requirements, courts must apply a more flexible standard in determining the sufficiency of the *pro se* [complaint] than the Court would in reviewing a pleading submitted by counsel." *Smith v. U.S. Dep't of Just.*, 218 F.Supp.2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)).

The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

When Samsung makes factual assertions that are not contained in the complaint, such statements cannot be considered in determining a Rule 12(b)(6) motion. As explained in *S.E.C. v. Goldstone*, 952 F. Supp. 2d 1060 (D.N.M. 2013):

"Generally, the sufficiency of a complaint must rest on its contents alone. See *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010); *Gossett v. Barnhart*, 139 F. App'x 24, 24 (10th Cir. 2005) (unpublished) ("In ruling on a motion to dismiss, the district court is limited to the facts pled in the complaint."). Emphasizing this point, the Tenth Circuit, in *Carter v. Daniels*, 91 F. App'x 83 (10th Cir. 2004) (unpublished), stated: "When ruling on a Rule 12(b)(6) motion, the district court must examine only the plaintiff's complaint. The district court must determine if the complaint alone is sufficient to state a claim; the district court cannot review matters outside of the complaint." 91 F. App'x at 85.

In Samsung's motion to dismiss, Samsung continuously recognize Samsung as a defendant in *Golden v. United States* CFC Case No. 13-307C. Samsung was one

of the third-party contractors who was under contract to provide the Government with "*modified*" cell phones capable of CBRNE-H detection.

Samsung was performing the work for the Government with the Government's "authorization" or "consent" to infringe Plaintiff's patents; but Samsung was privileged to have "immunity" from any infringement liability.

In *Golden v. United States* CFC Case No. 13-307C, Samsung was listed as a third-party contractor; contracted to commercialized *"modified"* cell phones capable of CBRNE-H detection. Under Rule 14(b) of the Rules of the United States Court of Federal Claims (RCFC), the court notified Samsung to make an appearance to protect its interest in the subject matter of the suit. Although Samsung failed to appear, the notice *(Exhibit A)* filed on 03/31/21 establishes Samsung as a third-party with an interest in the case; but Samsung failed to protect any interest.

There was never a final decision on infringement in the U.S. Court of Federal Claims (CFC) between Golden and Samsung, because a dispute between two private entities [Golden and Samsung] is outside of the CFC's jurisdiction. But Samsung will have this Court believe that there was a final decision on Samsung's alleged patent infringement made in the CFC. Plaintiff never claimed this in the complaint.

## SAMSUNG IS BOUND BY THE DOCTRINE OF COLLATERAL ESTOPPEL AND THE DOCTRINE OF VERTICAL STARE DECISIS

The United States Court of Appeals for the Federal Circuit Judges in *Golden v. Samsung* Case No. 23-2120; agreed with the Northern District of California Court Judge in *Golden v. Samsung* Case No. 23-0048 that direct infringement arises "through nine "standard sensors" which "can be used as 'biosensors,'" Appx126."

In *Golden v. Samsung Electronics America, Inc.* Case: 23-2120, Document 28; *OPINION* filed for the court by Prost, Circuit Judge; Taranto, Circuit Judge and Chen, Circuit Judge. Filed: 02/12/2024. "Mr. Golden's complaint alleged, in part,

that Samsung's smartphones possess that claimed detector/sensor functionality on three alternative bases: [] and (3) through nine "standard sensors" which "can be used as 'biosensors,'" Appx126."

Samsung admits that Mr. Golden's complaint filed in the Northern District of California Court in *Golden v. Samsung* Case No. 23-0048 alleged "nine standard sensors which can be used as biosensors". Samsung also admits the "nine standard sensors which can be used as biosensors", is found within each of Samsung's accused instrumentalities. Samsung further admits, it is making, offering for sell, selling, and purportedly importing the Samsung Galaxy smartphones that include the "nine standard sensors which can be used as biosensors" and performs the accused detector/sensor functionality.

---

**Smartphone Biosensors Submitted to the Courts:**

1. Ambient light sensor: Cancer biomarkers; Toxic metals; Pathogens
2. Capillary inlet: (Air analysis). Airborne Pathogens; Aerosols
3. Capillary inlet: (Fluid analysis). Blood analysis; Biomarkers
4. Microfluidic cassette: Interchangeable cassettes with varying assays
5. VIS-NIR spectrometer: Food freshness; Melanoma
6. NNAP Electrodes: Toxic metals and Organic pollutants in water
7. Optical Waveguide: Pathogens in water and food
8. Back and front camera: Colorimetric analysis; Image analysis
9. Microphone: Voice recording stress levels

---

Plaintiff believes Samsung is fully knowledgeable and aware they are "collateral estoppel" from re-litigating the decision of the Northern District of California case in *Golden v. Samsung* Case No. 23-0048; "nine standard sensors which can be used as biosensors"; only one sensor is required to satisfy the statute.

The Western District Texas court is *Horizontal Stare Decisis* to the NDC's Patent Local Rules' decision: 3.1(c) "identifying specifically where [the chem/bio

sensors are] and how each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function"; which means as required, Plaintiff has identified what and where inside the Samsung Galaxy smartphone the sensor(s) for Chem/Bio detection is located.

Collateral estoppel (CE), known in modern terminology as issue preclusion, is a common law estoppel doctrine that prevents a person from relitigating an issue. One summary is that, "once a court has decided an issue of fact or law necessary to its judgment, that decision ... preclude[s] relitigation of the issue in a suit on a different cause of action involving a party to the first case". *San Remo Hotel, L.P. v. City and County of San Francisco, Cal.*, 545 U.S. 323 (2005). Collateral estoppel is an efficiency rule that is meant to save judicial resources by avoiding the relitigation of issues of fact that have already been litigated.

Plaintiff alleges Samsung is fully knowledgeable and aware that, under the doctrine of *Vertical Stare Decisis*, the current case *Golden v. Samsung* Case No. 26-0831, is bound by the decision made by the higher United States Court of Appeals for the Federal Circuit in *Golden v. Samsung Electronics America, Inc.* Case: 23-2120; "nine standard sensors which can be used as biosensors"; only one sensor is required to satisfy the statute.

A court engages in *vertical stare decisis* when it applies precedent from a higher court. For example, if the Western District of Texas Court adhered to a previous ruling from the U.S. Court of Appeals for the Federal Circuit, that would be *vertical stare decisis*. The idea that the decisions of higher courts take precedence over the decisions of lower courts—is deeply entrenched in the American legal system. This idea is part of what makes the Supreme Court "supreme."

Samsung failed to address these fact issues in its motion to dismiss.

## RES JUDICATA AND KESSLER

In Samsung's motion to dismiss, it is improper for Samsung to seek invalidation of Plaintiff's patents simply because the patents were named in another case(s). Each independent patent claim describes a different version of the invention.

The term of Plaintiff's patents is twenty years; therefore, if Plaintiff alleged in a previous case Samsung is infringing certain claims of Plaintiff's patents for a smartphone invention; the Court ruled non-infringement because Plaintiff's patented smartphone invention require biometric or facial authentication to open the phone; and the alleged Samsung devices do not have or include biometric or facial authentication.

One year after the decision, Plaintiff finds out Samsung is making, using, offering for sale, selling, or importing Samsung smartphones that include biometric or facial authentication. Plaintiff have every right to bring an action against the same company [Samsung]; who is allegedly making, using, offering for sale, selling, or importing the same or similar products [smartphones]; with the same patents and patent claims; Samsung phones that now include biometric or facial authentication.

Under United States law, a patent is a right granted to the inventor of a (1) process, machine, article of manufacture, or composition of matter, (2) that is new, useful, and non-obvious. A patent is the right to exclude others, for a limited time (usually, 20 years) from profiting from a patented technology without the consent of the patent holder. Specifically, it is the right to exclude others from: making, using, selling, offering for sale, importing, inducing others to infringe… [] 35 U.S.C.A. § 154(a)(2). [Ex. Samsung phones' fingerprint/facial authentication].

1854 – In *Winans v. Denmead*, the US Supreme Court decided that the interpretation of patent claims is a question of law, decided by a judge, while the finding of infringement is a question of fact, decided by a jury. 56 U.S. 330, 338 (1854) This remains a binding precedent currently.

The Motion to Dismiss should deal with claims individually. Claims are one sentence descriptions, included in a patent, that describe what aspects of the invention are protected by law. There are independent claims and dependent claims. Dependent claims add details to independent claims and are consequently "narrower" than their parent independent claim. The Samsung product need only infringe one claim, independent or dependent, to "infringe the entire patent." See *Johns Hopkins University v. CellPro, Inc.*, 152 F3d 1342 (Fed Cir 1998).

In a precedential decision, the U.S. Court of Appeals for the Federal Circuit in *Vascular Solutions*, along with related Teleflex companies (collectively with Vascular Solutions, "Teleflex") *v. Medtronic*, Inc. defined the concept of "***mutual exclusivity***" in patent claims:

The Federal Circuit held that the district court erred when it determined the asserted claims were "*mutually exclusive*" and indefinite. The Federal Circuit rejected the notion that claims in a patent cannot vary in how they describe the disclosed subject matter or that independent claims must be totally consistent with other independent claims.

The Federal Circuit stated: "The district court's conclusion, in effect, means that (1) claims in a patent cannot vary in the way they claim the disclosed subject matter, and (2) independent claims must be totally consistent with other independent claims. Claiming is not restricted in this way." It emphasized that the art of patent claiming often involves drafting claims in various ways to encompass different aspects of the disclosed subject matter, as long as each claim informs those skilled in the art about the scope of the invention with reasonable certainty.

The Federal Circuit instructed the district court to "conduct claim construction on a claim-by-claim basis with the understanding that, at the claim construction stage, the claims are not necessarily '*mutually exclusive*' since each independent claim is a different ordered combination of limitations."

## SAMSUNG ENCOURAGES A JUDICIAL SYSTEM OF
## SYSTEMIC AND STRUCTURAL RACISM

*Questions*: Why would Samsung devote so much time boasting and bragging about how many times Plaintiff's cases never made it past the pleading stage? Why is it Samsung continue to reference cases Plaintiff filed in the U.S. Court of Federal Claims (CFC) against the United States? What exactly does that have to do with the "legal sufficiency" of Plaintiff's complaint?

> "Since 2013, Mr. Golden has asserted his portfolio in an unsuccessful litigation campaign, filing fifteen complaints claiming infringement of eleven patents against the United States of America as well as Apple, Google, Intel, Qualcomm, and Samsung. [*Golden v. United States*, No. 13-307 (Fed. Cl. May 1, 2013); *Golden v. United States*, No. 19-104 (Fed. Cl. Jan. 17, 2019); *Golden v. Apple, Inc.*, No. 19-2557 (D.S.C. Sept. 11, 2019); *Golden v. Apple, Inc.*, No. 20-2270 (D.S.C. June 16, 2020); *Golden v. Apple, Inc.*, No. 20-4353 (D.S.C. Jan. 5, 2021); *Golden v. Google LLC*, No. 21-244 (D.S.C. Jan. 26, 2021); *Golden v. Qualcomm Inc.*, No. 22-3283 (N.D. Cal. June 6, 2022); *Golden v. Intel Corp.*, No. 22-3828 (N.D. Cal. June 28, 2022); *Golden v. Apple, Inc.*, No. 22-4152 (N.D. Cal. July 15, 2022); *Golden v. Google LLC*, No. 22-5246 (N.D. Cal. Sept. 14, 2022); *Golden v. Samsung Elecs. Am., Inc.*, No. 23-48 (N.D. Cal. Jan. 5, 2023); *Golden v. United States*, No. 23-185 (Fed. Cl. Feb. 7, 2023); *Golden v. United States*, No. 23-811 (Fed. Cl. May 31, 2023); *Golden v. Google LLC*, No. 25-434 (W.D. Tex. Sept. 18, 2025); *Golden v. Samsung Elecs. Am., Inc.*, No. 25-596 (W.D. Tex. Dec. 22, 2025)]. None of Mr. Golden's claims have made it past the pleading stage."

Samsung cannot be held liable for infringement in the CFC court. The statute and cause of action for patent infringement in the CFC court, 28 U.S.C. § 1498(a) is different from the statute and cause of action for patent infringement in the District Court 35 U.S.C. § 271(a)(b)(c)(g).

Upon information, Plaintiff believes Samsung is conducting a pressure campaign to get the Western District Court to imitate the "systemic and structural racism" that Plaintiff have been the victim of, in other Courts. [SCDC; CFC; NDC]

"[T]he release of an exhaustive report detailing California's role in perpetuating discrimination against African Americans" … "The 500-page document lays out the harm suffered by descendants of enslaved people even today, long after slavery was abolished in the 19th century, through discriminatory laws and actions in all facets of life, from housing and education to employment and the legal system" … "Four hundred years of discrimination has resulted in an enormous and persistent wealth gap between Black and white Americans," said the report by the California Task Force to Study and Develop Reparation Proposals for African Americans…" Retrieved from: https://www.pbs.org/newshour/nation/historic-california-report-on-systemic-racism-in-law-and-policy-hailed-by-slave-reparations-advocates *(Exhibit C)*

Since 2013 Plaintiff have reviewed hundreds of pleadings (complaints) filed under the standards established by the U.S. Supreme Court in *Twombly* and *Iqbal*. The Courts almost always allow the complaint to stand on the first attempt; but for certain allows the amended complaint. Therefore, Plaintiff believes that because he has been made a victim of a judicial system of systemic and structural racism, Plaintiff "claims have never made it pass the pleading stage. The judicial system's way of depriving Plaintiff of his seventh amendment right to a trial by jury on the fact issues of Plaintiff's patent infringement claims.

## CONCLUSION

Plaintiff spent five years (2003-2004) traveling the country speaking with members of Congress and private industry about three economic stimulus for restoring the Nation's economy after the 9/11 terrorist attacks. Plaintiff sent the stimulus packages to the President and Vice-President of the United States, and three Federal Senators here in the state of South Carolina. All of them sent Plaintiff reply letters stating the packages were forwarded to the Department of Homeland Security (DHS) for implementation. *(Exhibit D)*.

Each stimulus package required new and innovative technology for implementation. Plaintiff's Anti-terrorism Product Grouping (ATPG) package required the development of a new, improved upon, and useful cell phone device (i.e., plaintiff's patented communication, monitoring, detecting, and controlling (CMDC) device), for implementation.

In 2008 the DHS negotiated agreements in DHS's S&T BAA07-10 *Cell-All* initiative; with the cell phone manufacturers Samsung, Apple, LG, and Qualcomm for the development and commercialization of Plaintiff's CMDC device (i.e., a new, improved upon, and useful cell phone device). Samsung decided take possession of the technology for the new and improved upon cell phone by making, offering for sale, selling, and importing into the United States the Samsung Galaxy Smartphone.

Nancy Pelosi, a government witness, announced at the Democratic National Convention that the "smartphone" was invented by the Government *(Exhibit E)*. She failed to mention it was Plaintiff who shared the information with the Government for a new, improved upon, and useful cell phone device. Plaintiff owns the patent rights to twenty-eight (28) independent claims, and eighteen (18) dependent claims for his CMDC device (i.e., new, improved upon cell phone; smartphone).

Sincerely,

s/ *Larry Golden*

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(M) 8649927104

Email: atpg-tech@charter.net

## **VERIFICATION**

### **Pursuant to 28 U.S.C. § 1746**

I, Larry Golden, over the age of 18, competent to testify, and having firsthand knowledge of the facts stated herein, do hereby declare, certify, verify, affirm, and state under penalty of perjury under the laws of the United States of America, that the foregoing statements are true, correct, and complete to the best of my understanding, knowledge, and belief, and made in good faith.

Executed and signed this 27th day of February, 2026, with all rights reserved and without recourse and without prejudice; is this "verification" for "Plaintiff's Response to Defendant's Motion to Dismiss".

s/ *Larry Golden*

Larry Golden, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
atpg-tech@charter.net
864-992-7104

31

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 27th day of February, 2026, a
true and correct copy of the foregoing "Plaintiff's Reply in Support of Plaintiff's
Response to Defendant's Motion to Dismiss", was served upon the following
Defendant via express mail:

> Melissa R. Smith
> GILLAM & SMITH, LLP
> 303 South Washington Avenue
> Marshall, Texas, 75670
> Phone: (903) 934-8450
> Fax: (903) 934-9257
> Email: Melissa@gillamsmithlaw.com

> s/ *Larry Golden*
> Larry Golden, Pro Se
> 740 Woodruff Rd., #1102
> Greenville, South Carolina 29607
> atpg-tech@charter.net
> 864-992-7104

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED






**UNITED STATES POSTAL SERVICE.**   *Retail*

**P**   US POSTAGE PAID
**$11.95**
Origin: 29616
02/28/26
4536240276-01

**PRIORITY MAIL®**

0 Lb 15.10 Oz

**RDC 03**

EXPECTED DELIVERY DAY:  03/04/26

C096

SHIP
TO:
RM 380
800 FRANKLIN AVE
WACO TX 76701-1934

USPS TRACKING® #



9505 5105 5565 6059 1083 52

PS00001000014    EP14F October 2023
OD: 12 1/2 x 9 1/2

Expected deliv

Domestic ship

USPS Tracking

Limited interna

When used int

urance does not
mestic Mail Manu
See International M

FLAT R
NE RATE ■ /

RACKE

**RITY®**
**L**

nal destinations.

e

coverage.

ee Package Pickup,
he QR code.

COM/PICKUP


**UNITED STATES POSTAL SERVICE®**  |  **PRIORITY MAIL**

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:

*LARRY GOLDEN*
*740 WOODRUFF*
*#1102*
*GREENVILLE, SC 29607*

RECEIVED
MAR 04 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

TO:

*U.S. DISTRICT CLERK'S OFFICE*
*CASE No: 25-0596-DAE*
*800 FRANKLIN AVE. ROOM 380*
*WACO, TEXAS 76701*

Label 228, December 2023    FOR DOMESTIC AND INTERNATIONAL USE

WDTC