# Exhibit B

Subject: FW: Proposal Notice in COFC Case No. 13-307C
Date: May 15, 2021 at 10:23 PM MDT
From: atpg-tech@charter.net<atpg-tech@charter.net>
To: yh.eom@samsung.com, j.stinziano@sea.samsung.com, chrisk@sea.samsung.com, atpg-tech@charter.net

Mr. Young Hoon "YH" Eom:

My name is Larry Golden. I am providing Notice to Samsung Electronics of a proposed settlement offer made to the Government, who has indicated their plans of enforcing obligations on Apple Inc., Samsung, and LG Electronics to indemnify the Government for a patent infringement liability that could possibly trigger damages dating back to year 2007.

To save on time, I am forwarding you the same attachments (in two separate emails) that I sent the CEO of Apple, Inc. Tim Cook, on Thursday, May 13, 2021. Basically, the only difference is the settlement offers: For Samsung it's $12 billion taxable to me, and $8 billion tax-free with the condition the Government accepts my offer. If the Government elects not to accept my offer, with this Notice you have the opportunity to do so.

I am providing this *notice* today (05/15/2021) because the DOJ (Government Defense in COFC Case No. 13-307C; *Larry Golden v. The United States*, has fail to do so. The Judge presiding in this case entered in his ORDER of 02-26-21 the following resolution (Dkt. No. 215):

> Resolution: "He includes separate charts for a device manufactured by LG, one by Apple, and Samsung. The next chart in exhibit 7 explains why he believes that the Cell-All initiative resulted in the manufacture of these devices for DHS… Read together with the sixth amended complaint, it is clear that Mr. Golden is alleging that the government caused the manufacture of all of these devices or caused these devices to use his technology." Judge Bruggink's "Order" Dkt No. 215; filed on February 26, 2021 in Case No. 13-307C

Pursuant to Rule 14 of the Rules of the United States Court of Federal Claims, the Defense has sent out *NOTICE* letters to Apple, Samsung, LG, and Qualcomm (Qualcomm is at Dkt. No. 169). ***See attachment: Apple Samsung LG Notice Letters***

On May 2, 2021, I sent the following to the Defense (Government) via email after a telephone conference that included my proposal for settlement: ***See attachment: Read-Ahead Document***

> Before our telephone conversation on Thursday, April 29, 2021 at 11:00 am Eastern, I sent you, via email, a Read-Ahead document that covers the subject matter you requested for conversation: "discuss [Plaintiff's] infringement contentions for Apple, Samsung, and LG.
>
> Included in the Read-Ahead document is Plaintiff's "proposed settlement" for Apple, Samsung, LG, and Qualcomm. Plaintiff included the "proposed settlement" for Apple, Samsung, LG, and Qualcomm because as you stated in your "THIRD MOTION FOR NOTICE"; Dkt. No. 216 Filed 03/12/21: ***"any judgment against the government with respect to any government use of the accused commercially available consumer electronics devices may trigger indemnification obligations of these third parties."***
>
>> Case 1:13-cv-00307-EGB Document 216 Filed 03/12/21 Page 4 of 6: "Accordingly, if Plaintiff is accusing of infringement in this action the government's use of commercially available consumer electronics devices that are manufactured by Apple, Samsung, or LG, but that are unconnected to the CELL-ALL program, Apple, Samsung, and LG may each have an interest in appearing in this action. Apple, Samsung, and LG may have an interest in establishing their respective rights to manufacture, use, and sell the accused commercially available consumer electronics devices free from claims of infringement, as illustrated by Plaintiff's suits filed in

> the District of South Carolina. ***Furthermore, any judgment against the government with respect to any government use of the accused commercially available consumer electronics devices may trigger indemnification obligations of these third parties.***"

> Case 1:13-cv-00307-EGB Document 219 Filed 03/26/21 Page 3 of 6: "The Government never actually entered into contracts with any of LG, Apple, or Samsung as part of the CELL-ALL project, despite the cited aspirational statement in the 2010 DHS article. See, e.g., Dkt. 217 at 3 ("The Government denies that DHS S&T executed any CRADAs with Qualcomm, LG, Apple, or Samsung related to the CELL-ALL project"); Ex. 1 at 1, 3 ("none of these entities were ever third-party contractors to the CELL-ALL project")."

During the one hour and fifteen-minute conversation, you never discussed your obligation by law to inform Apple, Samsung, LG, and Qualcomm that a proposed settlement offer is pending their response. I will repeat the offer below that is based on Plaintiff's calculation of estimated damages:

**Estimated Damages:** I am alleging the Cell-All devices (i.e., new and improved cell phones and new and improved watches; capable of CBRNE&H detection), are "suitable for use" because of my "new and improved central processing unit (CPU); the wireless communication protocols (i.e., Cellular, Wi-Fi, Bluetooth, radio-frequency near-field communication (NFC)); and, the iOS and Android operating systems (OS) used by Apple, Samsung, and LG infringes my communicating, monitoring, detecting, and controlling (CMDC) devices.

> "In *FastShip LLC v. United States*, a unanimous panel of the Federal Circuit addressed an issue of first impression, construing "manufactured" in § 1498 to mean "suitable for use," thereby affirming Court of Federal Claims Judge Charles Lettow, who rejected FastShip's argument that "manufactured" means "substantially manufactured." In effect, the Federal Circuit held that the government will not be liable under § 1498 where an allegedly infringing product is not completed to the point of being "suitable for use" prior to expiration of the asserted patent claims." <u>All of the alleged infringing products of Apple, Samsung, and LG are "suitable for use".</u>

The "*CELL-ALL Ubiquitous Biological and Chemical Sensing*" is a request made for a new and improved cell-phone "capable of detecting hazardous biological and/or chemical materials with eventual expansion to the detection of explosive and eventually radiological materials (in future collaborations with other organizations)." (DHS S&T CELL-ALL BAA07-10 Published: 10/30/2007) ***See attachment: Cell-All Super Smartphones Sniff Out Suspicious Substances***

The chart below illustrates the estimated damages caused by the Government, to the Plaintiff. Plaintiff has calculated damages beginning in year 2013, and ending in year 2020:

| **Apple Inc.'s Sales and Revenue FY 2013 And FY 2020** | **Samsung Electronics' Sales and Revenue FY 2013 And FY 2020** |
|---|---|
| *Revenue in billion U.S. dollars* | *Revenue in billion U.S. dollars* |
| Year 2007 - Not Yet Determined | Year 2007 - Not Yet Determined |
| Year 2008 - Not Yet Determined | Year 2008 - Not Yet Determined |
| Year 2009 - Not Yet Determined | Year 2009 - Not Yet Determined |
| Year 2010 - Not Yet Determined | Year 2010 - Not Yet Determined |

| | |
|---|---|
| Year 2011 - Not Yet Determined | Year 2011 - Not Yet Determined |
| Year 2012 - Not Yet Determined | Year 2012 - Not Yet Determined |
| Year 2013 - $170.9B | Year 2013 - $77.8B |
| Year 2014 - $182.8B | Year 2014 - $86.8B |
| Year 2015 - $233.7B | Year 2015 - $93.6B |
| Year 2016 - $215.6B | Year 2016 - $91.2B |
| Year 2017 - $299.2B | Year 2017 - $96.6B |
| Year 2018 - $265.6B | Year 2018 - $110.4B |
| Year 2019 - $260.2B | Year 2019 - $125.8B |
| Year 2020 - $274.5B | Year 2020 - $143.0B |
| TOTAL -- $1,902.5B X 25% = **$475.6B** | TOTAL -- $825.2B X 25% = **$206B** |
| @ 10% = **$190B:** Exceeds SEC's 10% net assets reserve requirement for pending litigation | @ 10% = **$83B:** Exceeds SEC's 10% net assets reserve requirement for pending litigation |
| **LG Electronics' Sales and Revenue FY 2013 And FY 2020** | **Qualcomm Inc.'s Sales and Revenue FY 2013 And FY 2020** |
| *Revenue in billion U.S. dollars* | *Revenue in billion U.S. dollars* |
| Year 2007 - Not Yet Determined | Year 2007 - Not Yet Determined |
| Year 2008 - Not Yet Determined | Year 2008 - Not Yet Determined |
| Year 2009 - Not Yet Determined | Year 2009 - Not Yet Determined |
| Year 2010 - Not Yet Determined | Year 2010 - Not Yet Determined |
| Year 2011 - Not Yet Determined | Year 2011 - Not Yet Determined |
| Year 2012 - Not Yet Determined | Year 2012 - Not Yet Determined |
| Year 2013 - $53.4B | Year 2013 - $24.9B |
| Year 2014 - $55.5B | Year 2014 - $26.5B |
| Year 2015 - $53.1B | Year 2015 - $25.3B |

| | |
|---|---|
| Year 2016 - $52.0B | Year 2016 - $23.6B |
| Year 2017 - $57.7B | Year 2017 - $22.3B |
| Year 2018 - $54.9B | Year 2018 - $22.7B |
| Year 2019 - $55.8B | Year 2019 - $24.3B |
| Year 2020 - $56.5B | Year 2020 - $23.5B |
| TOTAL -- $438.9B X 25% = **$109.7B** <br><br> @ 10% = **$44B**: Exceeds SEC's 10% net assets reserve requirement for pending litigation | TOTAL -- $193.1B X 25% = **$48.3B** <br><br> @ 10% = **$19B**: Exceeds SEC's 10% net assets reserve requirement for pending litigation |

As I have demonstrated for years, and as the Court has recognized in Judge Bruggink's "Order" Dkt No. 215; filed on February 26, 2021 in Case No. 13-307C *See attachment: Judge Bruggink COFC Order; Dkt No. 215; Filed 02-26-21,* the described requested device(s), as a whole, of a new and improved cell-phone "capable of CBRN detection is what I am alleging the DHS and its third-party contractors (Apple, Samsung, Qualcomm, and LG) are infringing:

> "On October 21, 2013, the court granted defendant's motion for a more definite statement and directed plaintiff to file such, which he did a month later… [i]t continued to assert infringement of the 990 patent by DHS and NASA and a host of third-party electronics manufacturers, such as LG, Apple, and Qualcomm, whom he alleged had "cooperative agreements" with DHS…"

> "On February 7, 2014, the court granted plaintiff's December 30, 2013 motion to amend and supplement pleadings … Golden alleged infringement of the same '990 patent and elaborated his allegation that DHS indirectly infringed "the claims of Golden's [US RE43,990] patent" … through solicitation number "BAA07-10," entitled "CELL-ALL Ubiquitous Biological and Chemical Sensing," which was released on October 2007. Third Am. Compl. ¶¶ 28 (ECF No. 29). Plaintiff claimed infringement by third parties: "Seacoast Science Inc., Center for Nanotechnology at NASA's Ames Research Center, and Rhevision Technology Inc., Samsung Electronics Co. Ltd, LG Electronics Inc., Apple Computer Inc., and Qualcomm Inc.," but asserted that all the third parties had entered into cooperative agreements from the Department of Homeland Security for providing hardware, providing software, and providing wireless service. *Id.* ¶ 30."

> "On December 23, 2015, the court issued an order granting plaintiff leave to file a fourth amended complaint, which plaintiff did on February 12, 2016. In his fourth amended complaint, plaintiff inserted new allegations relating to patents other than '990. He alleged that the government infringed his patent no's '033, '280, '189, '497, '752, '761, and '891, two of which ('891 and '990) are apparently reissue patents."

> "On August 10, 2017, plaintiff filed a fifth amended complaint and a claim chart. Fifth Am. Compl. (ECF No. 120). In it, plaintiff alleged seventy-two patent infringement counts involving ten patents…"

"On October 26, 2020, we granted plaintiff's motion for leave to file a sixth amended complaint, and it was docketed on November 3, 2020. On that basis we recited that the only remaining claims at that point related to the '497 patent. This was in error. In fact, the amended complaint, attached to the motion to amend, included claims with respect to plaintiff's patents '752, '189, '439, and '287…"

"Plaintiff also alleges his "communicating, monitoring, detecting, and controlling ("CMDC") device is commercialized in the form of an improved cell phone, smartphone, smartwatch, laptop, or tablet. The specifications and capabilities of the CMDC devices that were developed for, manufactured and commercialized by third-party government contractors, Apple, Samsung, and LG, are significantly the same as the Plaintiff's CMDC devices." Sixth Am. Compl. ¶¶ 6, 12. Attached to the sixth amended complaint is a claim chart that purports to identify features of devices alleged to be part of the DHS Cell-All initiative that infringe claims of the patents asserted in the current complaint. Id. Ex. 7"

"It appears that Mr. Golden asserts that the Cell-All initiative resulted in the manufacture of a variety of devices that infringe his patents. We can reasonably infer that he is pointing the finger at the federal government for the inclusion of his technology in these third-party devices."

"[P]laintiff has added detail regarding devices he believes were manufactured for or because of the government by these parties… Thus, the '497 patent remains at issue along with the newly added patents. We are thus unable to dismiss on the basis that the claims of the sixth amended complaint have been previously adjudicated."

"As to defendant's argument that plaintiff's current infringement allegations are too "vague as to the nature of the Cell-All project and exactly how plaintiff alleges the Cell-All Project infringed the '497 Patent," we disagree. Def. Mot. to Dismiss at 12. In alleging infringement of his patented CMDC technology, plaintiff attached a lengthy series of "claim charts" illustrating allegations of how the government, and third parties at the government's behest, are infringing certain of his patents' claims. Sixth Am. Compl. Ex. 7 at 100-108. Defendant's motion has not attempted to wrestle with that chart or otherwise explain with any detail why those claims fail as a matter of law." ***In the second email, see the Preliminary Infringement Contentions attachments: Ex A – Introduction; Ex B – Apple; Ex C – Samsung; Ex D – LG Electronics; and, Ex E – Introduction.***

"He includes separate charts for a device manufactured by LG, one by Apple, and Samsung. The next chart in exhibit 7 explains why he believes that the Cell-All initiative resulted in the manufacture of these devices for DHS… Read together with the sixth amended complaint, it is clear that Mr. Golden is alleging that the government caused the manufacture of all of these devices or caused these devices to use his technology."

Upon information and belief, beginning in the year 2007, the Government created a motive to form a conspiracy that included Apple, Inc. and other alleged co-conspirators, i.e., Samsung Electronics, LG Electronics, and Qualcomm Inc. (The Sherman Act §1: Motive to Form a Conspiracy; Conspiracy; and Unreasonable Restraint on Trade). (Violation of South Carolina Consumer Protection and Unfair Competition Laws; Unjust Enrichment and Disgorgement of Profits) ***See attachment: ANTITRUST S.C. DISTRICT COURT GREENVILLE DIV.***

JURISDICTION AND VENUE

This complaint is filed under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26), to recover triple damages, injunctive relief, and costs of suit; recover damages under South Carolina state antitrust and common laws, for violation of Section 1 of the Sherman Act (15 U.S.C. § 1; conspiracy in the restraint of trade illegal).

This Court has original federal question jurisdiction over the Sherman Act claim asserted in this complaint pursuant to 28 U.S.C. §§ 1331 and 1337 and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26). This Court has jurisdiction under South Carolina law that are cognizable under this Court's supplemental jurisdiction, 28 U.S.C. § 1367(a). This Court also has jurisdiction over the South Carolina state law claims under 28 U.S.C. § 1332 because the amount in controversy for the Class exceeds $5,000,000, and there are members of the Class who are citizens of a different state than the defendants.

Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. § 1391 because defendants reside, transact business, or are found within this District, and a substantial part of the events giving rise to the claims arose in this District.

Statute for the Infringement of a Patent. 35 U.S.C. 271(a)(b)(c)" *See attachment: Amended Complaint 2 Greenville*

> (a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.
>
> (b) Whoever actively induces infringement of a patent shall be liable as an infringer.
>
> (c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.
>
> Statute: "Whoever actively induces infringement of a patent shall be liable as an infringer. 35 U.S.C. 271(b) (1952)." Inducing infringement is when one person induces another person to infringe. In general, the courts have held that the patent owner must prove the following elements to prevail in a claim of inducement:
>
>> 1. that the defendant knew of the patent;
>>
>> 2. that the defendant communicated with another person with the intent of causing that person to infringe the patent; and
>>
>> 3. that the other person actually infringed the patent.

"Selling the part [added: device] where the seller had an intent that the buyer infringes became modern 'inducement' of infringement." "The Federal Circuit Court noted that direct evidence of intent is not required to demonstrate intent to induce infringement. Circumstantial evidence of intent is sufficient" *Water Technologies Corp. v Calco, Ltd.*, 850 F.2d 660 (Fed. Cir. 1988)


Willful infringement is found when the conduct is done deliberately and intentionally, and with knowledge of the patent. It is my belief; the willfulness began when the alleged violations of Antitrust Law i.e., motive to form a conspiracy, and conspiracy, began in year 2007. Federal statute (35 U.S.C. § 284) provides that when damages resulting from patent infringement are found, "the court may increase the damages up to three times the amount found or assessed."

Judge Stark quoted the words of Chief Justice Roberts, who said "The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or-indeed-characteristic of a pirate."

Apple has demonstrated its deliberate and intentional conduct of ignoring the fact that I have patents that covers the "new and improved cell phone and watches" manufactured by Samsung Electronics Co. Ltd, LG Electronics Inc., Apple Inc., and Qualcomm Inc. on at least two separate occasions since the alleged conspiracy of 2007: 1) In a 2010 letter written to Bruce Sewell, SVP & General Counsel *See attachment: Letter to Apple Inc.*; and, 2) In a letter written to Tim Cook, CEO of Apple, Inc. in 2019. I was contacted via email by Krista Grewal Counsel, IP Transactions for Apple Inc. *See attachment: Response Apple 2019 08 15 Grewal letter to Golden.*

As I have indicated above, the Government, who's only liability in my proposal is to allow the settlement funds to be transferred, free from federal, state, and local taxes, has joined Samsung Electronics and other alleged co-conspirators, i.e., Apple, Inc., LG Electronics, and Qualcomm Inc., only to be indemnified of liability for patent infringement.

The Government doesn't seem to be concerned about the increased liability the Government can and will cause third-party new and improved cell phone manufacturers i.e., Apple, Samsung, LG, and Qualcomm by rejecting my proposal.

> The Government, and the third-party new and improved cell phone manufacturers i.e., Apple, Samsung, LG, and Qualcomm, has at least 261 million new and improved cell phones that includes CBRN&E detection capability "suitable for use". Taken from 2007 thru 2026 the average new and improved cell phone that includes CBRN&E detection capability is priced at $1000 dollars. 261 million cell phones at a price of $1000 per phone equals $261 billion dollars. A reasonable royalty percentage is 10 percent. 10% of $261 billion dollars equals $26.1 billion dollars.
>
> The third-party new and improved cell phone manufacturers i.e., Apple, Samsung, LG, and Qualcomm are expected to indemnify the Government in the following way: Apple pays $12 billion instead of $475.6 billion (chart). Samsung pays $8 billion instead of $206 billion (chart). LG pays $5 billion instead of $109.7 billion (chart). Qualcomm pays $1.1 billion instead of $48.3 billion (chart). Total is $26.1 billion
>
> The remaining liability to the Government is to guarantee all the above reasonable royalties paid by Apple, Samsung, LG, and Qualcomm to the Plaintiff are free from all taxes (federal, state, and local).

I am giving you the opportunity to settle in this case. You can settle for the $8 billion, which represents only a pinch of the liability owed, if you can convince the Government to allow the funds to be transferred tax-free. If you cannot convince the Government to allow the funds to be transferred tax-free, Samsung can settle this case for $12 billion.

If you reject my offer, in a week's time I will forward this e-mail over to the Securities and Exchange Commission and ask them to penalize you for failure to report, and for improperly reporting for years. I will also ask them to require you to set aside the $206 billion in estimated damages:

> "According to federal securities law, publicly owned companies must issue regular financial reports. These reports must disclose pending litigation if the company believes a possibility exists that the litigation will have a material effect on its financial results. Failure to disclose a lawsuit can result in sanctions, fines, suspension of trading in company shares, criminal charges and, of course, yet another lawsuit filed on behalf of the shareholders.

The Securities and Exchange Commission requires all companies listed on public stock exchanges to release regular financial reports. If a company is being sued, SEC Regulation S-K Item 103 may require disclosure of the lawsuit on its Form 10-K annual report as well as the Form 10-Q quarterly report. Disclosure means naming all of the parties to the lawsuit, describing the factual basis and giving the date the suit was filed and the amount of damages the plaintiff is seeking.

The SEC does not require disclosure if a legal claim against a company is a routine event the company experiences in the course of business or if the claim represents less than 10 percent of its assets. If a client claims a small loss of wages due to a faulty product made by General Electric, for example, the amount of relief sought would be far less than 10 percent of the company's net assets and by definition would not have a "material adverse effect" on the company. GE would not need to disclose the lawsuit in its quarterly or annual reports or report the outcome.

Generally accepted accounting principles are a set of rules in accounting practice used for public and private companies. By GAAP standards, a company must set up a "reserve" for possible losses due to a pending lawsuit, if a loss in the case is probable, the financial loss will have a material effect on the company and the company can estimate the amount of the financial loss. The amount of the reserve is not fixed, but the company must make a reasonable estimate and by SEC rules provide an explanation of the reason if it is unable to do so.

The SEC also ***requires disclosure of any proceedings by government agencies*** or any action in which an officer or director of the company, or any shareholder with more than 5 percent ownership, is one of the parties suing the company. Failure to disclose litigation can result in an SEC investigation. If SEC investigators find reasonable cause for an enforcement action, the agency will notify company officers involved in the investigation by filing a "Wells notice." The enforcement action may result in a court injunction forcing the company to disclose the lawsuit; the SEC may also levy a civil penalty as a condition of settling the matter. Of course, another outcome is possible -- a finding that the company has not violated the regulation."

https://smallbusiness.chron.com/happens-company-not-disclose-lawsuit-78241.html


After that I am going to file with the Federal Trade Commission (FTC) for a preliminary exclusion.

After that I am going to ask the District Court, in my pending alleged patent infringement and antitrust law violations cases, for a preliminary injunction.

The settlement doubles for each level of litigation. If we continue to a final judgement, and I have won, I will seek ownership. I will ask the Appeals Court to grant me 50% ownership in Samsung Electronics America, Inc. after the share price has bottomed.


Larry Golden

(H) 864-288-5605

(M) 864-992-7104

(E) atpg-tech@charter.net